HEARD NOVEMBER TERM, 1877.

## WILLIAMS *vs.* KIBLER.

Testator devised to each of his three grandsons a tract of land, "to him during his natural life, and then to his children forever;" but if "either of my said grandsons should die without leaving a child or children capable of inheriting the share of the property I have given to him, then and in that case it is my will that the share so given to him shall go to and be divided between the survivors; or if two of the should die without either of them leaving children capable of inheriting their or either of their shares, then it shall go to the survivor during his life, and then to his children forever." The will also contained a residuary clause by which the . testator devised "all of his other property, of every kind and description whatsoever, to his said three grandsons, to be equally divided between them." Each of the three grandsons died without children: *Held,* That each of the three grandsons took an estate for life in the land devised to him, with remainder to his children and with cross remainders between him and the other devisees in case he died without children,—the survivor taking all the lands upon the death of two of the devisees, neither of them leaving children; and that upon the death of the survivor, leaving no children, the residuary clause took effect and vested the estate in all the lands, from the death of the testator, in the three grandsons absolutely and in fee.

A residuary clause of all the testator's "property, of every kind and description whatsoever," carries all his interests in real estate otherwise undisposed of by the will, whether such interests be vested, or future, contingent or reversionary.

BEFORE MACKEY, J., AT LANCASTER, OCTOBER TERM, 1876.

This was an action by Mary J. Williams and Nancy Williams against Andrew J. Kibler, James S. McCardle and James H. Williams for the partition of certain lands of which William G. Stew-

art, deceased, was in possession at the time of his death, and of a considerable portion of which the defendant, Andrew J. Kibler, held a mortgage given to him by the said William G. Stewart.

The case is stated in the decree of His Honor the Circuit Judge, which is as follows:

"This cause was heard before me at October Term, 1876. The plaintiffs claim that the real estate left by Isaac Stewart, deceased, consisting of lands lying in Lancaster County, shall be partitioned and divided amongst the children of Molcy J. McCardle, deceased, as the sole surviving heirs of the said Isaac Stewart, deceased. Isaac Stewart died in 1836, leaving of force his last will and codicil thereto, of which copies will be herewith filed. The solution of the questions raised depends upon the construction of the will. The will bears date December 10th, 1833. The codicil, which is simply a republication of the will, was executed December 7th, 1835, after the death of the testator's wife.

"At testator's death, his only heirs-at-law were his four grand-children, namely, William G., Isaac N., Andrew J. and Molcy J. Stewart. Molcy J., who afterwards became the wife of John McCardle, whom she survived, is now also dead, and her children are now claiming the said real estate as reversioners.

"All of the testator's grandsons are now dead, William G. Stewart being the sole survivor of the three. Molcy J. McCardle survived two of the brothers, but died before William G. William G. died in possession of the whole of the said real estate. The property and estate left by him will prove insufficient for the payment of all his debts. His creditors, of whom Andrew J. Kibler is the principal and largest, claim that, under the terms of the testator's will, the said real estate was held by him at the time of his death absolutely in fee simple, and that the same now constitutes an asset for the payment of the debts against his estate.

"On hearing the pleadings, evidence and argument of counsel, it is the judgment of the Court that the children of the said Molcy J. McCardle, deceased, are entitled to the land described in the complaint, as heirs-at-law of the said Isaac Stewart, deceased, and it is so ordered and adjudged."

The following is a copy of the will of Isaac Stewart:

"To all whom it may concern: Be it known that I, Isaac Stewart, of the District of Lancaster and State of South Carolina, being

of sound and disposing mind and memory, do make and ordain this my last will and testament as follows, to wit:

"After the expenses of the decent interment of my body, and the payment of all my just debts, I give and bequeath to my beloved wife, Mary, (if she survive me,) during her natural life, all my lands and negroes, stock of cattle, horses, hogs, sheep, wagons, carts, plantation tools and all my other property of any and every description whatsoever; also, any money I may have by me at my death.

" I give to my grandson William George Stewart the plantation or tract of land whereon I now live, containing two hundred acres, more or less, after the death of my wife, if she should survive me, during his natural life, and then to his children forever.

"I give to my grandson Isaac Newton Stewart all that tract or plantation of land called the McIlwain tract, containing one hundred and twenty-three acres, more or less, after the death of my wife, if she should survive me, to him during his natural life, and then to his children forever.

" I give to my grandson Andrew Jackson Stewart all that plantation or tract of land called the Bolton tract, containing one hundred acres, more or less, after the death of my wife, if she should survive me, to him during his natural life, and then to his children forever.

" I give to my granddaughter, Molcy Jane Stewart, the sum of one hundred dollars, to be paid to her when she marries or comes to the age of twenty-one years.

" I also give to my said grandsons, to wit, William George, Isaac Newton and Andrew Jackson, to them and for their use, during their natural lives, my negroes, to wit, Comfort, Mose, Jim, Rum, Dorcas, Rachel and Ailsey, and their increase, to be equally divided between them at my death; or if my wife should survive, then to be equally divided between them at her death; and should it so happen that an equal division cannot be made of the said negroes and their increase between my said grandsons, then and in that case it shall be the duty of the parties interested therein to divide the said negroes and their increase equally as they can, and after such division, if they cannot agree upon the sum of money to be paid from one to the other to make the lots equal, it shall be left to three men, to be chosen by the parties interested therein, who may fix the sum of money to be paid by either of those who may

have the more valuable lot and thereby make the division equal. And it is my, will that my said grandsons take nothing more than a life estate in the said negroes and their increase, and that the lots which may fall to them or either of them shall be for their use during their or either of their lives and to their or either of their children forever.

" I also give all my other property, of every kind and description whatsoever, to my said three grandsons, to be equally divided between them at my death, or, if my wife should survive me, at her decease.

"And it is further my will that if it should so happen that either of my said grandsons should die without leaving a child or children capable of inheriting the share of my property I have given to · him, as above recited, then and in that case it is my will that the share so given to him shall go to and be divided between the survivors; or if two of them should die without either of them leaving children capable of inheriting their or either of their shares, then it shall belong to the survivor during his life, and then to his children forever.

" I also nominate and appoint my beloved wife, Mary, to execute this my last will and testament."

The codicil is as follows:

" DECEMBER 7TH, 1835.—I republish this to be my last will and testament, confirming every part and clause of the same."

From the foregoing decree Andrew J. Kibler appealed on the following grounds:

I. Because William G. Stewart, at the instant of his death, was seized *ex vi termini* in fee simple of the lands mentioned in the decree.

II. Because if, under the terms of the will, no reversionary interest was left in the testator, William G. Stewart, as survivor of the three brothers, was seized in fee simple at the instant of his death of at least nineteen-thirty-sixths of said lands.

III. Because, even if title to the land on the death of William G. Stewart reverted to the heirs-at-law of the testator, the estate of the said William G. Stewart, as heir of the testator and of his two

predeceased brothers, became entitled to five-twelfths thereof absolutely.

*Moore,* for appellant:

William G. Stewart, as survivor, took all the estate in the lands devised to the three brothers.—*Swinton* vs. *Legare,* 2 McC., 449; *Yates* vs. *Mitchel,* 1 Rich. Eq., 265; *DeTreville* vs. *Ellis,* 1 Bail. Eq., 40.

1. If, as survivor, he took only a life estate in remainder, then at his death the lands reverted to the heirs-at-law of the testator.

2. If there was such reversion, he, (or his representatives,) as such heir of the testator and as heir of his two predeceased brothers, took in fee simple five-twelfths of all the lands devised.— *Wilson* vs. *Keer,* 2 Hill, 550; *Young* vs. *Dinkins,* Rich. Eq. Cas., 23.

But the reversionary estate in the lands was caught up by and disposed of in the residuary clause, in which the testator gives and bequeaths all of his "other property, of every kind and description whatsoever," to his said three grandsons, "to be equally divided between them."

1. The words employed in this clause (the remainders to the children of the grandsons having failed) were sufficient to carry to the grandsons the reversion left in the testator.

In *Wall* vs. *Langdale* (14 East) the words of the will were: " I give and bequeath the residue of my property, goods and chattels." Lord Ellenborough held that the real estate passed under the former words. The comprehensive import of the word " property," when unrestricted by qualifying expressions in the will, is also shown in various other English decisions cited by Jarman on Wills.—See pp. 190, 579, Perk. ed.; see also *Doughtery* vs. *Doughtery,* 2 Strob. Eq., 63.

2. By this residuary clause the three grandsons, in addition to estates for life in the several parcels, took the reversion in the whole of said lands as joint tenants in fee simple, defeasible upon contingencies which have never occurred. This construction, it is submitted, is fully sustained by the decision of the Appeal Court in the case of *Hopkins* vs. *Mazyck,* Rich. Eq. Cas., 263. Stephen Mazyck (pp. 273–4) devised certain real estate to his three sons, Benjamin, Paul and Alexander, for and during their several and respective natural lives, with remainders to their children respect-

ively. All of them died, leaving no children. By the 13th clause of his will the testator devised the rest and residue of his said real estate to the same three sons. It was held, on the principle laid down in Roberts on Wills, 439,—" a residuary clause will extend to every latent reversion which the testator might have in him, unless it is expressly excluded by devise to some other person,"—that each of said sons took an estate in fee simple, such estate never having been defeated by the contingent remainders taking effect.

3. Had the provisions of the will of Isaac Stewart ended here, it would have followed that each of his grandsons would have taken an estate for life in the portion of land specifically devised to him and the reversion of the whole of the lands in fee simple as joint tenant with his two brothers.

4. In this aspect, the "*jus accrescendi,*" which was formerly the distinguishing feature of joint tenancies, would not have prevailed; and upon the death of the survivor, William G. Stewart, the whole of the lands would have been devisable amongst the heirs of the three brothers—to the heirs of each the one-third thereof, according to their respective rights, at the death of each brother respectively. Hence the estate of William G. Stewart, the survivor, would have consisted only of five-ninths of the whole lands, to wit, of one-third as devisee and one-twelfth and five-thirty-sixths thereof as heir-at-law of his two predeceased brothers.

William G. Stewart, as survivor of the three brothers, took in the whole of the lands devised an estate in fee simple, defeasible upon his death leaving children.

One of the first canons of construction is that the intention of the testator, (to be ascertained from a consideration of all parts of the will,) where it does not contravene the policy of the law, nor is defeated by some obstinate technical rule, must prevail. Applying this principle to the facts in this case, we find:

1. That the testator intended to dispose of his whole estate and of every interest held by him therein.

2. That in and by the residuary clause he used expressions, according to the authorities above quoted, adequate to effect this purpose.

3. That his three grandsons were the principal objects of his bounty.

4. That he clearly intended (any two of them dying leaving no children) that the survivors should succeed to the shares of his estate devised to the three.

5. William G. Stewart had succeeded to these shares. The residuary clause, which operated to vest in the three brothers (in addition to estates for life with limitations to the survivors or survivor) the entire reversion, must, therefore, have enlarged his estate in the lands into a fee simple, defeasible upon his dying leaving a child or children capable of inheriting the lands.

6. Had the residuary clause been omitted, according to the decisions in the case of *Addison* vs. *Addison,* (9 Rich. Eq., 58,) William G. would have taken in the lands devised to the three brothers a fee conditional, and upon his death without heirs of his body the lands would have reverted to the right heirs of the testator. He was, therefore, the only remaining object upon which the residuary clause could operate, and the reversion superimposed upon the fee conditional must, as in the case of *Hopkins* vs. *Mazyck,* before cited, have enlarged his estate into a fee simple defeasible.

8. If he took in the lands a fee defeasible, then the fee must continue in him until the happening of the contingency upon which it is to be defeated; and if, as is said in the case of *Carr* vs. *Porter,* (1 McC., 60,) "the contingency never happens, and can never happen, then the title can never be defeated," it follows that the estate of William G. Stewart in the lands devised to the three brothers ripened, at the instant of his death, into a fee simple absolute.

9. this result, too, it is submitted, is in exact accord with the plain intention of the testator as manifested by the general tenor of his will.

I. If either of the three foregoing propositions can be maintained the decree of the Circuit Court is erroneous.

II. If proposition 3 can be maintained the complaint should be dismissed.

*Wylie & Hough, Allison & Connors,* contra:

1. Did the brothers, Isaac N., Andrew J. and William G. Stewart, under the will take estates for life with cross remainders for life, remainders in fee to children or children of survivor? If so, the remainder in fee upon the testator's death, without either of the life tenants having children, descended to Isaac N., Andrew J., William G. and their sister Molcy, in equal portions, subject to be divested upon either or any of the grandsons afterwards having children. Upon the death of Isaac without children his one-fourth

vested equally in Margaret, his mother, his two surviving brothers and his sister Molcy; and upon the death of A. J. Stewart his interest became divisible between his mother and surviving brother and sister, which would leave in the mother two-twelfths and in Wm. G. and Molcy each five-twelfths of the whole.

2. If each of the brothers under the will took a fee simple, then upon the death of Isaac N. and A. J., William G. became entitled to five-ninths and Margaret and Molcy each to two-ninths as heirs-at-law of the two deceased brothers.

3. If the brothers under the will became tenants in fee conditional, (and we think they did,) then upon the death of Isaac N. without children his one-third vested in the persons who were heirs to testator at that time; and upon the death of A. J. another third became vested in like manner, and one-ninth, the interest which the said A. J. inherited from Isaac, vested in his own right heirs, to wit, his mother, brother and sister; then, upon the death of the surviving brother, the remaining third vested in such persons as were then heirs of testator, and the interests which he had inherited upon the deaths of his deceased brothers went to his mother and the children of his sister Molcy, then dead. This gave Molcy or her children thirty-five-fifty-fourths, Margaret, the mother, two-fifty-fourths, and left seventeen-fifty-fourths in the estate of William G. Stewart.

It is said by Harper, Ch., in Adams vs. Chaplin, (1 Hill Ch., 269,) "that the right of reverter after fee conditional is no estate in land, but a mere possibility, and therefore it is no remainder can be limited after the preceding fee." "This right * * * must go, as at common law, to the person who can make himself heir to the grantor of the fee conditional when that estate determines." See, also, Deas vs. Horry, (2 Hill Ch., 214,) to the same effect.

If there was a life estate in the Stuart brothers, there was a good limitation to the children as purchasers. To them during life, and after death to their children and their heirs forever, would make the children purchasers—a new stock of inheritance; but in the last clause of the will we have this language: "If either of my grandsons should die without leaving a child or children capable of inheriting the share of my property I have given to him as above recited, then and in that case it is my will that the share so given to him shall go and be divided between the survivors; or if two of them should die without either leaving children capable of inheriting their or either of their shares, then to the survivor during his life,

and then to his children forever." This shows the intention to be that the children shall take by inheritance the share of the parent, and makes "children" equivalent to heirs of the body or issue, and comes within "the rule in Shelly's case." The words "issue," "heirs of the body" and "children" are generally regarded as equivalent in a will.—2 Jarm., 73, (marg.)

To A and his children would, if A had children at the time, make them tenants in common, but if he had not children it would give to him an estate tail in England and in this State a fee conditional.— Wild's case, 2 Jarm.; *Reeder* vs. *Spearman*, 6 Rich. Eq., 92.

To a man during his natural life, and then to the heirs or issue of his body forever, would certainly make a fee conditional—as much so as if to him and the heirs of his body forever, (*Whitworth* vs. *Stuckey*, 1 Rich. Eq., 404); and the words "during life" have not the effect to cut the interest down to a life estate in the first taker, with remainder to heirs of the body as purchasers; indeed, such like expressions have little or no effect generally when used in such a connection.

It is admitted that "children" is generally a word of purchase, but it is contended that the words "capable of inheriting" so qualify the word as to make it the same as issue of the body. Leave out the words "during his natural life" and the devise to each of the Stewarts will read "to him and then to his children forever;" then add the limitation over in the last clause, "but if he should die without leaving children capable of inheriting his share, then it shall belong to," &c.

"If the term used in the limitation is 'son' or 'child,' and it is used in the sense of *heir* and not as a '*designatio personæ*,' but comprehending a class to take by inheritance, it is to be taken as a term of limitation, and comes within the rule in Shelly's case."— 2 Washburn on Real Property, 560.

It is said that the word "leaving" should be construed to limit an otherwise indefinite failure of issue to a failure of issue living at the death of the first taker, to enable ultimate remaindermen to escape the objection of remoteness and take, when otherwise they would take nothing; so it is always construed when applied to personal property.— *Whitworth* vs. *Stuckey*, 1 Rich. Eq., 411. "The word "leaving" in an executory devise will restrain an otherwise indefinite failure of issue to the death of the first taker in regard to personal estate, but will not do so in the case of real estate."—1

Bail. Eq., 48. But "leaving *issue capable of inheriting*" it is contended will admit of no such construction—leaving issue capable of inheriting is the same as "without issue," for children or issue, however remote, may inherit.

The intention was to include any and all issue of the body as inheritors from the grandsons, and it was not intended that they should take except through and from them; otherwise grandchildren and those more remote would not take at all, but only children living at the death of testator. It certainly was not the intention that if any one of the grandsons should die after testator's death, leaving no child, but a grandchild or descendant of more remote degree, that such child or descendant should take nothing, and this might have been the effect if the grandsons had a life estate only, upon the death of one or more of them leaving issue other than children. "It has been said," says Mr. Jarman, "where there is a total want of children, grandchildren may be let in; no such case, it is conceived, can be found, and the doctrine appears to rest solely upon some *dicta*," &c.—2 Jarm., 70, (marg.)

"An immediate gift to children    *    *    *    comprehends the children living at testator's death, and those only."—2 Jarm., 75; see also *Swinton* vs. *Legare*, 2 McC. Ch., 440.

If, as we contend, the estate devised to the grandsons was a fee conditional, then what is called the residuary clause, so far as a remainder or reversion in the land is concerned, has nothing to operate on. Fee conditional, as stated in *Adams* vs. *Chaplin*, is the whole estate. That no remainder can be limited upon a fee conditional is undoubted law. "The possibility of reverter on the determination of the fee by the death of the tenant without heirs of his body is not an estate; it is neither the subject of inheritance or devise *    *    *    ."—*Adams* vs. *Chaplin*, 1 Hill Ch., 265.

But suppose there was only a life estate to the grandsons, with cross remainders amongst them, remainder to children of survivor or survivors, then upon the death of survivor without children what became of the estate? Under the authority of *Hopkins* vs. *Mazyck*, (Rich. Eq. Ca., 279,) it is claimed that all interest, latent reversions, &c., pass by these words: "I also give all my other property, of every kind and description whatever, to my said three grandsons, to be equally divided between them at my death, or, if my wife should survive me, then at her decease."

To his wife, testator had not only devised and bequeathed his lands and negroes during life, but also *all his stock, wagons, carts, &c.* To his grandsons only lands and negroes after her death; then the clause above quoted was intended to pass the stock and all other personal property (except negroes) which otherwise would not be disposed of by the will after the widow's death. The residuary clause in *Hopkins* vs. *Mazyck* is very different from this. The language is: "I give, devise and bequeath the rest, residue and remainder of my estate, *real* and personal, whatsoever and wheresoever, including any estate, *real* or personal, not hereinbefore particularly devised and bequeathed," &c.; and it was held that "the residuary clause carried the ultimate fee or reversion in the lands." In that case much stress is placed on the words "any estate, real or personal, not hereinbefore particularly devised or bequeathed,"— words so comprehensive as to pass any real estate or interest in the same not before *specifically* devised. "A residuary bequest operates on all personal estates at the time of the death of testator, including void legacies, &c.; but a residuary devise is in its nature *specific* and operates on land not before *expressed* to be given by the will."— 2 Jarm., 587. If there were nothing for this residuary clause to operate on except an interest in real estate, then there would be more ground for contending that it must operate upon such interest; but, even in that case, it is submitted that the language is insufficient to pass real estate which had been mentioned or *expressed to be given* by other clauses. This clause is not the last. It is succeeded by the one which (if the estates of the grandsons were only for life) gives the remainders and cross remainders. The well-established doctrine that the last clause in a will is to prevail would present a serious difficulty to appellant, even if the said residuary clause could operate so as to pass an interest in real estate, for the clause following would so limit and control it as to make the estates of the grandsons fees conditional only.

The will was republished by a codicil after the death of testator's wife, and without this residuary clause there was nothing in the will to pass other personal property besides negroes, which other personal property consisted of stock, wagons, carts, &c., and must have been of very considerable value; and in this clause real estate is not mentioned, and the words in it are apt and proper words to pass personal property, and we think this alone was the intention, and that this intention is clearly deducible, not only from this clause

but from the will considered as a whole, reconciling and giving effect to every clause in it, which is a well known rule of construction of wills.

January 18, 1879.   The opinion of the Court was delivered by

HASKELL, A. J.   A statement of the facts and a copy of the will are contained in the brief; and it is admitted that the testator's wife died before the republication of the will.   This Court is called upon to construe the will to determine what estate each of the three grandsons took in the real estate devised " to him during his natural life and then to his children forever," and what, on the death of any of them childless, passed to the survivors or survivor, and what final disposition, if any, was made of the property in the event of all three grandsons dying childless.  The comparatively recent cases, *Reader* vs. *Spearman*, (6 Rich. Eq., 89,) *Mc Corkle* vs. *Black*, (7 Rich. Eq., 407,) and *Gillam* vs. *Caldwell*, (11 Rich. Eq., 73,) seem to be in point.

The devise in *Reader* vs. *Spearman* was to A " and to his children after his death;" and in the event of A's "dying without issue," then and in that case to "revert to my estate and be divided among my surviving children or their issue."   It was held that A took only a life estate, with remainder to his children.

In *Mc Corkle* vs. *Black* the devise was to several persons, "to them during their lives, and after their death to their lawful issue," with a limitation over that "should any one or more" of the devisees "above mentioned die leaving no lawful issue, in that case it is my will that the portion or portions of him or her so dying shall be equally divided between the surviving brothers and sisters."   The question was, as in *Reader* vs. *Spearman*, "whether as to the real estate the said devisees take an estate in fee or fee conditional, or whether the issue take as purchasers by way of remainder after the termination of a life estate in the first takers."   It was held that although the direct devise would, by the force of its words considered alone, import a fee conditional, nevertheless the fee conditional was, by force of the context, cut down into a life estate to the first taker with a remainder to the issue as purchasers.

To thus cut down the fee to a life estate, it was necessary to construe "issue" to mean "issue living at the death of the first taker," and it was considered that such effect was produced by the limita-

tion over being to the other devisees "*as survivors.*" *Gillam* vs. *Caldwell* merely affirms the authority of *McCorkle* vs. *Black.* The difference between the present case and that of *McCorkle* vs. *Black* is to the extent that the word "children" differs in its technical sense from the word "issue." The former is primarily "a word of purchase and not of limitation," while the latter, "issue," is *nomen collectivum*—"not less extensive in its import than heirs of the body; it embraces the whole line of lineal descendants. * * * ·It will be seen, however, that in some instances the word *issue* has been diverted from its general legal acceptation by the occurrence of words of distribution or other expressions which point at a mode of devolution or enjoyment inconsistent with an estate tail and have been decided to be insufficient to convert the term *heirs of the body* into children or to prevent its conferring an estate tail."— 2 Jar., *331.

The limitation over to "survivors," while it diverts. the term "issue" from its general acceptation into "children," only strengthens and confirms the primary legal meaning of "children" to take as purchasers under the direct devise as in this case.

It is immaterial whether the word "then," which occurs in the *direct* devise "to him during his natural life and *then* to his children forever," be interpreted "at his death" or "after his death." In the cases above cited the word is "after," and it was not even attempted to show that this made "the devise to A and his issue in one unbroken limitation" rather than "a devise to A *for life* and *after* his death to his issue," while in *Markly* vs. *Singletary* (11 Rich. Eq., 393,) the learned Chancellor thought 'it worth while to observe the "peculiarly definite form of expression 'at her death'" as indicating the intention to use the word "issue" [in a deed] as "*designatio personarum.*" It is argued, however, that the expression "children capable of inheriting their or either of their shares," as used in the limitation over, is equivalent to "issue" and qualifies the word "children" in the direct devise. By the authorities already cited, that would not change the conclusion, for "issue" would be construed to mean "children." But the proposition cannot stand. "Child capable of inheriting" is neither more nor less than a "legitimate descendant of the first generation of the person named. * ·* * Remoter descendants are sometimes permitted to take under an enlarged sense of the term 'children' in support of the intention of the testator. * * * Such liberal construction

of the term 'children' is never made except for the benefit of the issue of children or from the force of the context."—*Matthis* vs. *Hammond*, 6 Rich. Eq., 399. The right to inherit is the right to a distributive share under the statute. To that each legitimate child is entitled, and " capable of inheriting" can be taken in no other sense. The expression is a mere description of children as named in the direct devise, and as connected with the specified portion of the property "as above recited," which was intended to go to the children of each of the three grandsons.

The conclusion is that each grandson took a life estate in the land devised to him with remainder to his children. It may, perhaps, be proper to remark that the same conclusion would apply to the negroes specifically bequeathed.

The last clause in the will contains the further provision that in the event that either of the "said grandsons should die without leaving a child or children capable of inheriting the share of my property I have given to him as above recited, then and in that case it is my will that the share so given to him shall go to and be divided between the survivors ; or if two of them should die without either of them leaving children capable of inheriting their or either of their shares, then it shall belong to the survivor during his life, and then to his children forever." The portion thus limited over to the survivors or survivor is the " share  *  *  given to him as above recited," which is the property specifically devised and bequeathed to each for life and described in the recital above ; but it does not embrace the property included in the residuary clause, which is to the three grandsons absolutely, to be equally divided between them. The estate of each in the share thus specifically described is for life. On the death of the first of the three brothers childless the estate which he had held for life passed to the survivors for life. That it goes to the two for life, with remainder to their children, is not said in so many words, but such was clearly the intention ; and cross remainders must be implied, for it is expressly declared that should two of them so die the whole should go to the survivor for life, and then to his children forever. Two did die childless, and all the property embraced in the three shares specifically given was in the survivor for life, and he, in the course of time, died likewise childless. Thus the last specific devise failed, and the question is, whether the testator died intestate as to that portion of his property and it reverted to his estate to be distributed

amongst those who were his heirs-at-law at the time of his death, or was it disposed of by him in any other portion of his will?

On this point the second proposition submitted on the part of the appellant seems to be sound, viz.: "That the reversionary estate in the lands was caught up by, and disposed of in, the residuary clause, in which the testator gives and bequeaths 'all of his other property, of every kind and description whatsoever, to' his 'said three grandsons, to be equally divided between them.'"

"Property of every kind and description whatsoever" includes real estate or any interest in real estate not otherwise disposed of by the will. "It has long been established that a devise of testator's *estate* includes not only the *corpus* of the property but the whole of the interest therein."—2 Jarm., *181, and cases cited; 1 Jarm., *665; *Drayton* vs. *Rose*, 7 Rich. Eq., 328. And "the word '*property*' *is equivalent to* '*estate*' in its operation to pass the interest as well as the land."—*Ibid*, *190. The rule with regard to the residuary disposition of interests in real estate to which the testator was entitled at the time of making the will is thus laid down by Mr. Jarman, (Vol. I, *588): "A residuary disposition of real estate will carry all the contingent or reversionary interests which a specific devise may leave undisposed of."—*Hopkins* vs. *Mazyck*, Rich. Eq. Ca., 263.

And "if the specific devise comprise only a partial or contingent interest in the lands, leaving an ulterior or alternate interest undisposed of, which would, in the absence of disposition, descend to the heir, such undisposed-of interest will, even in a will made before the year 1838, (Act of Victoria,) pass by a general residuary devise."

As "if a testator devised real estate to A for life, remainder to A's children living at his decease in fee, and the residue of the lands to B, it is clear that if A died either in the testator's lifetime or after his decease, without leaving a child surviving him, B would be entitled under the residuary devise."—*Ibid*, *591–2.

Thus in the case before us, the devises being to A, B and C for life, with cross remainders,—remainder in fee to their children or the children of the survivor,—and there being no ulterior or alternative disposition of the fee, and all the devisees for life having died without any of them having had a child, the fee was undisposed of by the specific devises, and passed, under the residuary clause, to the three grandsons, (*Hopkins* vs. *Mazyck*, Rich. Eq. Ca., 263,)

unless there be qualifying words which limit the meaning of the residuary clause to other things. The will was drawn originally with the intention of giving to testator's wife the enjoyment for life of all his worldly possessions, encumbered with a legacy of one hundred dollars to a granddaughter, to be paid to her upon her marrying or attaining the age of twenty-one years. He then proceeds to carve out of the land and negroes an estate for each grandson during his life, and after his death to his children; but these devises and bequests do not embrace all the property which he had previously given to his wife for life, i. e., "stock of cattle, horses, hogs, sheep, wagons, carts, plantation tools, and all my other property of any and every description whatsoever, also any money I may have by me at my death."

The residuary clause manifestly was meant to embrace that property, and it was given to the three grandsons *absolutely*, "to be equally divided between them at my death, or, if my wife should survive me, at her decease."

If the wife had survived the testator, it might have been argued with some force that the provision that the residuary estate should go not until the decease of the wife would imply that it included only such property as she was to enjoy during her life. It is clear that she could not have held a right to the reversion in fee, and the estate to her was limited strictly for life. But the wife died during the lifetime of the testator, and after her death he republished his will. The will must, therefore, be read as if all that portion which provides for the wife or refers to such provision were erased, unless it should be found necessary to refer to such portion to expound some ambiguous part of the instrument. No such necessity exists, and the will is composed solely of the legacy to the granddaughter, the specific devises and bequests to the grandsons, with remainder to their children, and a residuary clause giving absolutely to the three grandsons "all" his "other property of every kind and description whatsoever," "to be equally divided between" them at his death. This, beyond question by all the authorities, includes the reversionary interest in the lands. And this conclusion is manifestly in harmony with the intention of the testator. After the death of his wife he had but one object before his mind—the welfare of his three grandsons. They were "the objects of his bounty in the first instance; * * in the second instance, their issue. But for the expectation of such issue he would in the first instance have given the fee" to his grandsons.—*Hopkins* vs. *Mazyck*, 275.

In fact, in this respect it is needless to draw any distinction between this case and that of *Hopkins* vs. *Mazyck*, in which the Court says: "When stripped of the confusion of the different clauses devising to the sons respectively for life, and to their children after their deaths, the effect of the whole will taken together is that the sons *   *. take a joint estate in fee in the land, to be defeated by all or either leaving issue living at their or his death, when the estate in fee would be severed, the issue taking in fee the particular lands devised to their respective fathers for life."

The grandsons, William G., Isaac N. and Andrew J. Stewart, took a life estate in the tracts described in the will and specifically devised, " and also took a fee in the lands, liable to be divested only by the contingencies of their having issue alive at their own deaths." The contingencies having failed, the fee remained in them; and on the death of the last grandson, which rendered the contingency impossible, the land became distributable amongst those who were the heirs-at-law of the respective grandsons at the time of the death of each of them respectively, (or their devisees, in the event of their having disposed of it by will). In case they died intestate the surviving brothers would be distributees, together with their sister and mother, who is stated to have survived one or more of the three grandsons of the testator.

The judgment of the Circuit Judge is reversed and the cause remanded, that such further proceedings may be had as shall be found necessary to adjustment in pursuance of the views herein expressed.

Motion granted.

*Willard*, C. J., and *McIver*, A. J., concurred.