## AGNEW v. RENWICK.

1. A and B purchased together a tract of land and several slaves and other personalty to be worked by them in partnership, and at the same time gave their mortgage on this and other property, and pledged other collaterals, to secure the purchase money. Afterwards they offered this purchased property for sale, and B bid off the land and a portion of the personalty and assigned his bid to C, to whom both A and B made deeds of conveyance, and to whom the mortgagee released and relinquished all the lien of said mortgage on the land and personalty purchased by him. The purchase money was paid by C to the mortgagee. The wife of A did not renounce her dower, and more than twenty years after this, A having died, she brought this action to recover dower in one-half of this land. *Held*, that she was entitled to the dower demanded.

2. Petition for rehearing refused.

PER McIVER, A. J.

3. The paper executed by the mortgagee to C was only a release of the mortgage lien upon the property purchased by him, and gave him no interest in the mortgage; but if construed as an assignment, the mortgage was extinguished, C thereby becoming the mortgagee of his own property. The only exception to this rule is where, as in *Agnew* v. *Railroad Company* (24 S. C., 18), there is an express agreement to prevent the merger.

4. More than twenty years having elapsed since the maturity of the mortgage debt, the law will presume the mortgage satisfied.

5. The sale to C was not under or through the mortgage, notwithstanding the purchase money was, by agreement, credited on the mortgage.

Before KERSHAW, J., Newberry, July, 1886.

This was an action by Julia F. Agnew against Marcellus A. Renwick and others, for dower. The opinion states the case. The Circuit decree was as follows:

The respondents in this case appeal from the decree of the

probate judge, allowing dower in the lands described in the petition to the extent of one moiety thereof, whereof the husband of petitioner was seized during coverture jointly with one Daniel R. Sartor. In so far as the appeal is based upon the fact that the land in question was purchased by Agnew & Sartor as partners and for partnership purposes, this court concurs with the judge of probate; that question is concluded against the appellants by the very recent decision of the Supreme Court in the case of *Bowman* v. *Bailey* (20 *S. C.*, 553), which case is on all fours with this in that respect.

The chief difficulty in this case arises out of the defence of the existence of the mortgage given by Agnew & Sartor for the purchase money of the land, assigned to the Bank of the State of South Carolina, and by it released to Kinard & Renwick, who afterwards purchased the land in question from Agnew & Sartor, and thus united in themselves the rights of mortgagors and mortgagees; owners of the fee and of the encumbrance. The respondents here claim under Kinard & Renwick.

In his conclusions this court cannot concur, in this regard, with the court below. It is admitted that whether the release of the mortgage was to operate as an assignment or a discharge of the mortgage, is a question of intention. The probate judge says, "The release does not seem to be intended as an assignment." An examination of the facts shows that the release was executed December 27, 1858, whereas the interest of Agnew was not acquired by them until April, 1859, and the interest of Sartor April 6, 1859. The consideration given to procure the release to them of the mortgage was $35,574.12, secured to the bank by the said Agnew & Sartor. Can it be imagined that it was their intention that the mortgage should be satisfied or discharged when in that case they would have had no security for so large an amount of money, other than possibly the mere verbal agreement on the part of Agnew & Sartor, that they would convey at some future time? I cannot so conclude without doing violence to all the probabilities. The intention could not have been otherwise than to hold the mortgage as their security to compel a conveyance, or by foreclosure to secure the title.

The next question is whether the mortgage merged into the

legal estate in the land after it was acquired by Kinard & Renwick. This, too, is a question of intention. Says Mr. Pomeroy (2 *Pom. Eq. Jur.*, § 790): "When the owner of the fee becomes absolutely entitled in his own right to a charge or encumbrance upon the same land, with no intervening interest or lien, the charge will, at law, merge in the ownership and cease to exist. Under like circumstances a merger will take place in equity when no intention to prevent it has been expressed and none is implied from the circumstances and interests of the party." The rule is stated on the authority of the case of the *Insurance Company* v. *Murphy* (111 *U. S.*, 744), as follows: "If there is no reason for keeping the mortgage alive, such as the existence of another incumbrance, then equity will, in the absence of any declaration of his intention, destroy it. In short, when the legal ownership of the land and the absolute ownership of the incumbrance become vested in the same person, the intention governs the merger in equity." *Agnew* v. *C. C. & A. R. R. Company*, 24 *S. C.*, 18. Mr. Jones, in his treatise on mortgages (sec. 848), says: "If the owner has an interest in keeping these titles distinct, or if there is an intervening right between the mortgage and the equity, there is no merger"—quoted in the opinion of the court in 111 *U. S.*, 744, *supra*. We cannot escape the conclusion that the mortgage did not merge in this instance, but that the title remained distinct.

In answer to this view it is urged that nevertheless the mortgage is extinguished by lapse of time and the presumption of payment. It is replied that this presumption cannot arise, because after the transfer of the mortgage and the title to the land to Kinard & Renwick, no action could have been brought on the mortgage, and it was only held to protect their title. There was nobody to pay it. It was their interest that it should be kept open as a valid and subsisting lien upon their land. And they had a right to so retain it. They unite in their own persons the position of mortgagee and owner of the land subject to it: and have the same power to keep open the encumbrance as if the rights were held by different persons who agreed to keep up the encumbrance. While they are willing it should remain so, the demandant in dower cannot complain or have any advantage

thereby. If she came forward with an offer to redeem, she might thereafter be in a position to complain of it. No presumption of payment can arise when the very object of acquiring the mortgage was, as we have seen, to protect the title, nor when the persons to receive the payment are the same who are to pay it. The position of payer and payee must be adverse, before there can arise the presumption of payment arising from lapse of time.

The case of *Agnew* v. *Railroad Company*, already referred to, decides that where the intention to keep open a mortgage assigned to the purchaser of the land is expressed, a purchaser of the same land under execution against the mortgagor could not recover the land from the assignee and grantee, the judgment under which the plaintiff claimed being subsequent to the mortgage, but prior to the assignment thereof and conveyance to defendant. Here the intention is implied, and the result is the same as if expressed, and the mortgage remained open to protect the title.

Under these circumstances what are the rights of the demandant? She had no legal right of dower, but only an equitable right to be endowed of the surplus, if any should remain after payment of the mortgage debt and full satisfaction thereof.

It devolved upon her to show under these proceedings that there was a surplus of which she was entitled to be endowed. She has failed to do so. On the contrary, the evidence shows that there was no surplus. The land was put up for sale at public auction after ample notice of the sale on a credit of one, two, and three years, and bid off at a sum constituting but a small part of the mortgage debt. The price bid was $19,065, while the mortgage was given for $64,000. True, there was other property included in the mortgage, and other property bought with the land and forming a part of the consideration of the debt for which it was given, but it was held in *Calhoun* v. *Calhoun* (2 *S. C.*, 286), that "a widow can only take dower in land mortgaged by the husband at the time of the purchase, and as part of the same transaction, subject to the payment of the entire mortgage debt, whether the same was in whole or in part only for the purchase money of the land, provided the same is recoverable at law." This was the language of Chancellor Johnson, concurred in by the court.

It required the entire amount for which the land and personal property sold to satisfy the bank and to procure the assignment from them of the mortgage, and there could, therefore, be no surplus. There is no allegation or pretence that the property sold at an undervalue. In the absence of some proof tending to show that there might remain a surplus of which she might be endowed, the demandant's action must fail. I think these propositions are fully sustained by the result of the authorities cited below, as well as many others: *Crafts* v. *Crafts*, 2 *McCord*, 54; *Brown* v. *Duncan*, 4 *Id.*, 350; *Stoppelbein* v. *Shulte*, 1 *Hill*, 200; *Klinck* v. *Keckley*, 2 *Hill Ch.*, 252; *Rickard* v. *Talbird*, *Rice Ch.*, 169; *Wilson* v. *McConnell*, 9 *Rich. Eq.*, 514; *Tibbetts* v. *Langley Man. Co.*, 12 *S. C.*, 466.

It is ordered and adjudged, that the judgment of the Probate Court be reversed, and that the cause be remanded to the Probate Court, to be there dismissed with costs to the respondents, to be paid by the demandant.

Plaintiff appealed.

*Messrs. Goggans & Herbert*, for appellant.

*Mr. M. A. Carlisle*, contra.

December 12, 1887. The opinion of the court was delivered by

Mr. Justice McIver. In April, 1857, Daniel R. Sartor and Samuel T. Agnew bought from one Rice Dulin a plantation, containing 1271 acres of land and forty-eight slaves, together with sundry other articles of personal property, for the sum of sixty-four thousand dollars. No part of the purchase money was paid in cash, but the same was secured by the bond and mortgage of the said Sartor and Agnew, which mortgage covered the said land and slaves so purchased, as well as eighty-two other slaves, belonging to the mortgagors. On May 6, 1857, this mortgage was assigned by Dulin to the Bank of the State of South Carolina. Sartor and Agnew after carrying on the plantation for about two years, on December 6, 1858, entered into an agreement in writing, to the effect following: that their part-

nership in planting should be dissolved ; that the entire partner-
ship property should be sold on December 27, 1858, on a credit
of one, two, and three years, the purchase money to be secured by
bond with two good sureties, to be "approved by the Bank of
the State, and a mortgage of the property if required," and that
the securities taken at such sale should be transferred "to the
said bank in release of our liability for the purchase money of
said property."

In pursuance of this agreement the property was advertised for
sale by Sartor & Agnew, with a slight variation as to the terms,
whereby all sums under fifty dollars were to be paid in cash before
the delivery of the property, the advertisement containing a
statement that "Col. S. Fair [who was the attorney representing
the bank] will receive all bonds or payment for the purchases of
the property as our agent." The property was accordingly
offered for sale at the time designated, when the land and a con-
siderable amount of the personal property was bid off by Sartor
at the sum of about $35,000. Col. Fair attended the sale, the
mortgagors, Sartor & Agnew, being also present, and all the
proceeds of the sale were delivered to Col. Fair as attorney for
the bank. Sartor failing to comply with his bid, the same was
transferred to John P. Kinard and James A. Renwick, but the
time when such transfer was actually made does not appear. It
does appear, however, that an endorsement, bearing date Decem-
ber 27, 1858, was made upon the list of the property bid off by
Sartor, of which the following is a copy :

"South Carolina, Newberry District. Know all men by these
presents that I, Simeon Fair, as agent and attorney in fact for
the president and directors of the Bank of the State of South
Carolina, in consideration of the sum of thirty-five thousand five
hundred and seventy-four dollars and twelve cents, secured to be
paid by three several promissory notes, payable to Thomas R.
Waring, cashier, or bearer, dated December 27, 1858, with
interest payable, do hereby release and relinquish unto John P.
Kinard and James A. Renwick, their heirs and assigns, all the
lien of a mortgage held by the president and directors of the
Bank of the State on a certain tract of land, containing 1271
acres described in said mortgage, given by D. R. Sartor and

Samuel T. Agnew to Rice Dulin, and by him assigned to the said bank, dated April 12, 1857, and also release the following slaves contained in said mortgage to wit : [naming them] twenty-two in all, from all lien of said mortgage." This endorsement was originally signed "S. Fair, attorney for bank, per J. Elvin Knotts," but was afterwards, by writing, dated February 17, 1860, confirmed by Col. Fair. The notes referred to in this endorsement, as set out in the "Case," are signed by John P. Kinard and James A. Renwick, as principal, and by two other persons as sureties, and bear date December 27, 1858.

. It also appears that D. R. Sartor, by deed bearing date April 6, 1859, conveyed to Kinard & Renwick all his interest in the tract of land, containing 1,271 acres, and that the assignees of Agnew, who had, on March 9, 1859, made an assignment for the benefit of his creditors, by their deed, bearing date the        day of April, 1859, after reciting the making of the assignment, the fact of the sale on December 27, 1858, at which Sartor had bid off the land and failed to comply, and his consent that Kinard & Renwick should take the same at his bid, together with the fact that Sartor had by his deed above mentioned conveyed his interest to Kinard & Renwick, proceed to convey the interest of Agnew to said Kinard & Renwick. It also appears that, by an agreement under seal, purporting to have been executed on April 5, 1859, between Sartor of the first part, and Kinard & Renwick of the second part, Sartor agreed to "sell and convey to them, by good and perfect titles, all the property, both real and personal, which he, the said D. R. Sartor, bid off at the sale of Agnew & Sartor, and at the price there given," and the said Kinard & Renwick. agreed to take the same, and "to apply the purchase money of the said property to the mortgage debt due the Bank of the State by the said Agnew & Sartor, according to the terms of the sale of the said Agnew & Sartor." It further appears that the Bank of the State had received 'from Sartor three notes, amounting to twelve thousand dollars, as collateral security for the bond of Sartor & Agnew given to Rice Dulin, and by him assigned to the bank. It further appears that at the time of the sale, made on December 27, 1858, there were judgments to a large amount then remaining due and unsatisfied

which had been recovered against S. T. Agnew individually, and as a member of a firm known as S. T. Agnew & Co., subsequently to the execution of the mortgage held by the bank.

S. T. Agnew having died on September 21, 1873, this proceeding was instituted by the demandant as his widow on April 13, 1883, in the Probate Court, whereby she claimed that her dower in the one undivided half of the 1,271 acres of land, now in the possession of the defendants claiming under the said Kinard & Renwick, should be admeasured to her. This claim was resisted substantially upon two grounds. 1st. Because the land was held by Sartor & Agnew as partners, and the partnership debts being unpaid, no right of dower attaches until the same are paid, and then only in Agnew's share of any surplus that may remain after the payment of the debts. 2d. Because the mortgage given to secure the purchase money of the land being unpaid, no right of dower can attach.

The judge of probate overruled both of these defences and rendered a decree that the demandant was entitled to dower out of one-half of the land. From this decree defendants appealed to the Circuit Court, and the Circuit Judge, sustaining the judge of probate on the first ground, overruled him on the second, rendering judgment that the cause be remanded to the Probate Court to be there dismissed with costs. From this judgment demandant appeals upon the several grounds set out in the record, which raise the general question whether the mortgage and the transactions connected therewith are sufficient to defeat the claim of dower.

There can be no doubt that a widow is entitled to dower in lands mortgaged to secure the payment of the purchase money at the same time the mortgagor acquires title, but such right is subordinate to the lien of the mortgage. As against all persons other than the mortgagee, or one claiming through the mortgagee, her right to dower cannot be disputed by reason of such mortgage. *Stoppelbein* v. *Shulte,* 1 *Hill,* 200; *Klinck* v. *Keckley,* 2 *Hill Ch.,* 250; *Wilson* v. *McConnell,* 9 *Rich. Eq.,* 512. So that the practical inquiry in this case is whether the defendants can avail themselves of the mortgage given by Sartor & Agnew to Dulin, and by him transferred to the Bank of the State as a

bar to demandant's claim of dower. This depends upon two inquiries, first, whether the mortgage was ever transferred to Kinard & Renwick, and was held by them as an open subsisting lien upon the land; or, second, whether they can be regarded as purchasers under the mortgage.

The first inquiry involves the construction and effect of the endorsement, a copy of which is hereinbefore set out, which was placed upon the sale bill of the articles bid off by Sartor at the sale on December 27, 1858, which bid was afterwards transferred to Kinard & Renwick. This paper certainly is not, in form, an assignment of the mortgage, or any part thereof. There is not a word in it which indicates any intention to transfer the mortgage. Its language imports nothing more than a surrender of the lien of the mortgage to those who had become, or were about to become, purchasers of the mortgaged property from the mortgagors, so that they might take the property free from the lien of the mortgage. It must be remembered that the mortgage covered a very large amount of property—eighty-two slaves—besides that originally purchased from Dulin by Sartor & Agnew, and that the whole amount of property included in the mortgage was probably considerably more than double the value of the property which Kinard & Renwick proposed to purchase from Sartor & Agnew, and that the amount of the mortgage debt was more than double the amount of the purchase of Kinard & Renwick.

It is inconceivable that the bank, holding a mortgage on such a large amount of property to secure the payment of a bond for sixty-four thousand dollars, upon which the interest had been running for nearly two years, would have been willing to transfer such mortgage in consideration of the three notes of Kinard & Renwick for only $35,574.12, especially when the bank, in addition to the security afforded by the mortgage held as collaterals the notes of Sartor and others, of the face value of twelve thousand dollars. But it is very easy to understand why the bank should have done just exactly what the language of the paper imports—release the lien of its mortgage—not upon all the property included in the mortgage, but only on the property purchased by Kinard & Renwick, in order to secure a partial payment upon its

large debt. The language of the paper in question, as well as all the circumstances, show clearly that the intention was to do what is very often done in such cases, viz., that the mortgagor having found a purchaser for a portion of the mortgaged property, the mortgagee agrees to release the lien of the mortgage upon the property so sold by the mortgagor, upon the condition that the proceeds of such sale should be applied to the mortgage debt. How such an arrangement can be regarded as an assignment or transfer of the mortgage, it is very difficult, if not impossible, to understand.

But even assuming that the paper in question could be regarded as an assignment or transfer of the mortgage, or at least the lien thereof, so far as it affected the property bought by Kinard & Renwick, how does that affect the question of the demandant's right to dower? There is some controversy as to whether the several papers introduced in evidence were really executed on the dates which they bear. The endorsement on the bill of sale containing the list of the property bid off by Sartor, which is claimed to operate as an assignment of the mortgage to Kinard & Renwick, as well as the notes given by them to the bank bear date December 27, 1858—the day of the sale—while the agreement for the transfer of this property by Sartor to Kinard & Renwick bears date April 5, 1859, and the deed for the interest of Sartor in the land to Kinard & Renwick is dated April 6, 1859, and the deed from the assignees of Agnew to Kinard & Renwick for his interest in the land bears date the        day of April, 1859.

Governed by these dates, it would seem then that Kinard & Renwick took from the bank a release of the lien of the mortgage, or, under the assumption upon which we are now considering the case, took the assignment of the mortgage and executed their notes to the bank *before* they had purchased the property from Sartor, or, so far as appears in the "Case," before Sartor's bid had been transferred to them. This seems to be hardly probable, especially when taken in connection with the testimony of Kinard, that "Agnew had made an assignment of all his property before we bought the property," which assignment bears date March 9, 1859; and the more reasonable conclusion would seem to be, from these and other circumstances which it is need-

less to mention, that the endorsement and the notes of Kinard & Renwick were not really executed on the day on which they are dated, but after the purchase made by Kinard & Renwick from Sartor, and dated back to the day of sale in order that they might bear interest from that date, or for some other reason then deemed sufficient.

But waiving this and assuming that the Circuit Judge was right in considering the several papers as having been actually executed on the dates which they bear, what was then the real nature and legal effect of these transactions? Under this view, taking it in the light most favorable to the defendants, the transaction amounted simply to this—that Kinard and Renwick took an assignment of a portion of the mortgage, giving their notes to the bank for the amount specified, and *afterwards* purchased from the mortgagors the property covered by so much of the mortgage as had been transferred to them, and instead of paying the purchase money of such property to the mortgagors, assumed the payment of so much of the original mortgage debt as such purchase money amounted to, by giving their notes for the same to the bank. Reduced to its simplest form, the transaction amounted to a purchase by the mortgagee from the mortgagor of the mortgaged premises, not under proceedings for foreclosure, but at private sale. Now, under the admitted general rule, the legal effect of such a transaction is to extinguish the mortgage, and the only exception to this rule, recognized in this State, is that established by the case of *Agnew* v. *Railroad Company*, 24 *S. C.*, 18, and this court has said in *Bleckeley* v. *Branyan* (26 *S. C.*, 424): "We cannot venture to go further in relieving a mortgagee who purchases the mortgaged property than was indicated in the case of *Agnew* v. *Railroad Company, supra.*"

So that the inquiry is narrowed down to the inquiry, whether the case now under consideration can be brought within the exception recognized in Agnew's case. In that case, when the mortgagee purchased the mortgaged property from the mortgagor there was an *express* covenant inserted in the deed that the mortgage should "remain open to protect against claim of dower, liens, and encumbrances." This was clearly the extent of the exception to the well settled general rule recognized in that case, as is

shown by the subsequent case of *Bleckeley* v. *Branyan.* Where
parties have taken the precaution to protect themselves against
the operation of the general rule, by an express covenant to that
effect, they then bring themselves under the exception recognized
in Agnew's case, beyond which this court has said it will not
venture to go; but where no such precaution has been taken,
then the case must fall under the operation of the general rule.
As was said in *Navassa Guano Company* v. *Richardson* (26 *S.
C.*, 401), in speaking of Agnew's case: "In that case there was
an *express agreement* inserted in the deed that the mortgage
should remain open for the protection of the defendant against
intervening encumbrances, and this might be regarded as evi-
dence that the payment of the mortgage debt was not absolute,
but conditional; that if the mortgage was preserved, then the
conveyance was accepted in satisfaction of the mortgage debt, but
if the lien was not preserved, then the conveyance should not
operate as satisfaction."

Now, in the case under consideration it is quite certain that
there was no express agreement or covenant that the mortgage
should remain open as a protection against intervening encum-
brances, and hence the case cannot be brought under the excep-
tion recognized in Agnew's case. Indeed, it would be very diffi-
cult, if not absolutely impossible, to find any evidence whatever,
either written or otherwise, tending to show that the parties had
any intention to keep the mortgage open as a protection against
dower or any other encumbrance. · The only possible ground for
such an inference would be the fact that, *as it has turned out*, it
would have been to the interest of the mortgagees that such an
agreement should have been made, but, as was held in *Bleckeley*
v. *Branyan, supra*, that would not be sufficient; for, as there
said, if so, it would be impossible to conceive of a case where such
an inference could not be drawn, and thus the well settled gen-
eral rule would become absolutely useless whenever it became
necessary to apply it. From this it follows that the defence set
up to the claim of dower based upon the mortgage, cannot in any
view of the case be sustained, and that the Circuit Judge was in
error in ruling otherwise.

There is also another ground upon which such defence should

be ·defeated. While a widow can only claim dower out of land mortgaged to secure the payment of the purchase money contemporaneously with the acquisition of title by her husband, subject to the payment of the mortgage debt, or, as some of the cases express it, her claim is subordinate to the lien of the mortgage, yet when the mortgage debt is paid or otherwise extinguished, the lien of the mortgage is gone, and there is then nothing in the way of the claim of dower—nothing to which it is subordinate. Indeed, it is well settled ·in this State that where a husband dies seized of land covered by a mortgage upon which his wife has renounced her dower, or which being given to secure the payment of the purchase money of the land is superior to the claim of dower, the widow has an equity to require the executor or administrator to apply the personal assets, even though to the prejudice of simple contract creditors, in payment of the mortgage debt, so as to let in the widow's claim of dower. See *Wilson* v. *McConnell*, 9 *Rich. Eq.*, 500, and *Henagan* v. *Harllee*, 10 *Ibid.*, 285.

Now, in this case the bond which the mortgage was given to secure was dated April 13, 1857, and it is said was payable in one and two years. So that assuming that the last instalment fell due in 1859, it must be presumed paid by lapse of time, more than twenty years having elapsed several years before these proceedings were commenced, there being no evidence of any intervening acknowledgment or promise by the mortgagors— nothing to rebut the presumption of payment. If, then, the bond must be regarded as paid, the lien of the mortgage was likewise extinguished, and therefore when these proceedings were commenced, the mortgage, no matter in whose hands it may have been, afforded no bar to the claim of dower. The position taken by the Circuit Judge and relied upon by the respondents here, that this presumption cannot arise when the object of acquiring the mortgage was to protect against intervening encumbrances, is not tenable, because, as has been shown above, such was not the fact. But even if it was, it is not easy to perceive why this should prevent the presumption from arising. If the union of the character of payor and payee in the same person does not work payment by operation of law, and if payment

cannot be presumed after *any* length of time, then it would follow that the mortgage debt could never be regarded as paid—a conclusion which would not be readily accepted.

The only remaining inquiry is, whether Kinard and Renwick can be regarded as purchasers under or through the mortgage. It is quite certain that the mortgage does not invest the mortgagees with power to sell, and it is equally certain that the sale did not even purport to have been made under any such assumed or supposed power. Nor is it pretended that the sale was made under any proceeding to foreclose the mortgage. On the contrary, the sale was made by the mortgagors of their own motion, so far as appears, for the purpose of closing the partnership between Sartor and Agnew, under an agreement between them, to which the mortgagees were not parties, that the proceeds of the sale should be applied to the mortgage debt. There is no evidence that the bank, then holding the mortgage, had anything to do with making the sale. On the contrary, Sartor in his testimony says the sale was agreed to "by Agnew and myself, *no one else being instrumental in effecting it.*" The agreement for the sale and the advertisement of its terms were signed by Sartor and Agnew alone, and no one else appeared to have anything to do with it.

The provision in the agreement that the proceeds of the sale should be turned over to the bank, was quite natural under the circumstances. Both Sartor and Agnew were bound for the payment of the debt, and therefore it was very proper that the proceeds of the sale should be so applied, to say nothing of the fact that, without some such arrangement, the property, covered as it was by the mortgage, would not have been likely to bring much. But what is absolutely conclusive is the fact that so experienced a lawyer as Col. Fair was known to be should have taken the trouble to prepare and execute a release of the lien of the mortgage on the property bid off by Sartor at the sale; for if the property was considered as sold *under the mortgage*, that of itself would have operated as a discharge of the lien of the mortgage, and the release executed by Col. Fair would have been wholly unnecessary. It is clear, therefore, that the sale was not made under the mortgage, and the title of the purchasers was not de-

rived through that instrument. They took their title directly from the mortgagors, and to protect themselves against the lien of the mortgage, obtained a release of such lien from the mortgagees.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for the purpose of carrying out the conclusion herein reached.

MR. CHIEF JUSTICE SIMPSON and MR. JUSTICE McIVER concurred in the result.

A petition was filed by defendants praying the court to grant them a rehearing of the case. Upon this petition the following order was endorsed January 19, 1888:

PER CURIAM. We have carefully considered this petition, and finding that no material fact or principle of law has been overlooked in the decision heretofore rendered, there is no ground for a rehearing. It is therefore ordered, that the petition be dismissed.