## CAROLINA SAVINGS BANK v. McMAHON.

1. PROBATE OF DEED—OFFICIAL TITLE.—A purchaser of land cannot object to a deed in the muniments of his vendor's title because of the absence of the official title of the person before whom the probate was made, where there is sufficient evidence to show that such person was then an officer authorized to take affidavits. And the objection is untenable in this case for the additional reason, that the original deed, with proof appended of the death of grantor and witnesses and of their handwriting, was tendered to the purchaser, especially as no rights of third persons had intervened.

2. WORDS OF INHERITANCE—SHERIFF'S DEED.—The technical rule of law which treats a deed as a conveyance of only a life estate where the grant is to the grantee and not, also, to his heirs, has no application to a sheriff's deed, which purported to convey all of the debtor's estate, title and interest, where the sale was made under execution, and the judgment debtor was the owner in fee of the land levied and sold, inasmuch as the mandate of the court required the sheriff to sell the fee, and he could, therefore, sell no less.

3. SHERIFF'S SALE—DEED BY SUCCESSOR.—If a sheriff's deed is insufficient to convey the title which the purchaser at an execution sale is entitled to receive, a subsequent sheriff may make proper deed to the purchaser under the power conferred upon him by section 686 of the General Statutes, and such deed will relate back to the date of sale.

4. MORTGAGOR OUT OF POSSESSION—ALIENATION.—Where a mortgagor went out of possession of the mortgaged premises in the year 1848, and the mortgagee at once took possession, the mortgage operated as an alienation under the law then of force.

5. SHERIFF'S DEED—WORDS OF INHERITANCE—ADVERSE POSSESSION—PRESUMPTION.—Where a sheriff's deed purports to convey all of the judgment debtor's interest in the land levied and sold, but omits, through a clerical mistake, the technical words ordinarily necessary in deeds to convey the inheritance, and the purchaser takes possession and holds adversely, the statute of limitations will run in his favor, and after a holding for twenty years by his vendee under a deed purporting to carry the fee, a grant will be presumed.

Before IZLAR, J., Charleston, April, 1892.

This was an appeal by H. A. Heiser from a decree directing him to comply with his bid for a lot of land sold in April, 1892, under order of the court in the case of Carolina Savings Bank against Ellen McMahon, as administratrix of John Mc-.

Mahon, and others.  Master Sass, to whom the matter had been referred to take and report the testimony, with his conclusions of law and fact, reported as follows:

I find first, as matters of fact: That one Joseph Johnson, on August 15th, 1839, by deed duly recorded, conveyed to Patrick McBride the fee to the premises described in the complaint, the subject matter of this action.   This fee was held and owned by Patrick McBride, until levied upon and sold under the judgment and execution, in the case of the president and directors of the Bank of the State of South Carolina against McBride, Hanckel & Company, in 1847, as per evidence attached; of which defendant firm Patrick McBride was a member.   In this case there were judgment, execution, and levy, and sale thereunder of the property in question.   At such sale William B. Smith became the purchaser of the said premises, and the sheriff of Charleston County made a deed of the same to him on May 2d, 1848, which was duly recorded.   A copy of said deed in evidence contains the usual formal recitals, but through a clerical error omits the word "heirs" in the habendum clause of the deed.   It does, however, contain the words, conveying "all the estate, title, and interest which the said Patrick McBride, one of the firm of McBride, Hanckel & Co., of right had in and to the same."   William B. Smith thereupon took possession of said property and held the same, claiming title adverse against the world continuously and exclusively, until his conveyance of it to Robert White, September 14th, 1852, when the said Robert White entered into and took absolute possession of the same.

Patrick McBride, on November 21st, 1845, mortgaged the premises purchased by Mr. Smith at this sheriff's sale to the said W. B. Smith for forty five hundred dollars.   This mortgage was satisfied by W. B. Smith on September 14th, 1852, the date of his conveyance to Robert White.   No more money was paid for said satisfaction, but it was made at the request of Robert White.   The conclusion is irresistible that William B. Smith purchased at sheriff's sale the premises in question to protect his loan of forty-five hundred dollars, previously made by W. B. Smith, and secured by the said mortgage of Patrick

McBride to him, with dower renounced thereon, and duly re-corded. As stated, W. B. Smith, on September 14th, 1852, by deed duly recorded, conveyed the premises to Robert White. On the same day Robert White gave a purchase money bond and mortgage, which mortgage was duly recorded, for the sum of five thousand dollars, and the mortgage from Robert White to W. B. Smith was duly satisfied February 11th, 1862. Robert White held possession of the premises from 1852 to December 4th, 1863, when he conveyed the same in fee to John McMahon, on which day John McMahon executed a purchase money mortgage for the same, duly recorded, which was satisfied September 26th, 1864.

From then until the present time, John McMahon and his heirs held this property, claiming the same adversely against the world. John McMahon died in 1889. His wife, Ellen McMahon, has administered upon his estate. Before the death of John McMahon, he mortgaged the premises to Carolina Savings Bank and James F. Redding. The Carolina Savings Bank brought suit for foreclosure September 15th, 1890, and under those proceedings, concerning the validity of which no question is raised, the property was sold to Mr. H. A. Heiser at public outcry, after due advertisement, on April 12th, 1892, for five thousand one hundred and fifty-five dollars, he being at that price the highest bidder therefor. Mr. Heiser having refused to comply with his bid, on his return to rule served against him to show cause why he should not comply, he sets forth certain objections to the title which therein specifically appear.

I find further, as matter of fact, that the proof to the probate of the deed from Robert White to John McMahon, dated December 4th, 1863, is sworn to before John Phillips, a member at that time of the Charleston Bar, who neglected to sign as a magistrate or notary public, but in the purchase money mortgage, given on the same date, he signs his name to the probate of the same as a magistrate. It is admitted that the original deed from Robert White to John McMahon, with proper affidavits for re-recording under the law, was tendered Mr. H. A. Heiser before his rejection of the title to the property in dispute.

Upon these findings of facts, I, therefore, hold, as matter of

law: That the record of the deed of Robert White to John McMahon, dated December 4th, 1863, the probate to which was certified to before John Phillips, who failed to sign as magistrate, is valid, it appearing from the purchase money mortgage, of even date therewith, that the said John Phillips was a magistrate. *Genobles* v. *West*, 23 S. C., 155. Also, that the continuous adverse possession by John McMahon and his heirs from 1863 to the present time is sufficient to have cured such defect as alleged, if any existed. Also, that the purchase money mortgage given by John McMahon to Robert White on December 4th, 1863, duly recorded and satisfied, under the authority of *Spears* v. *Oakes*, 4 Rich., 347, together with the other facts proved in the case, are conclusive evidence that Robert White conveyed to John McMahon.

The serious question presented is as to the effect of the error of the sheriff in omitting the word "heirs" in his deed of May 2d, 1848. This question has been elaborately argued, and received my careful consideration. Upon the points made in the argument, I hold: *First.* That the sheriff's deed to W. B. Smith, conveying all the right, title, and interest of Patrick McBride, which was a fee, shows the intention to convey the absolute estate or fee, and did, in fact, convey it. *Brown* v. *Moore*, 26 S. C., 161; *Fuller* v. *Missroon*, 35 *Id.*, 314. *Second.* That the sheriff's deed relates back to the judgment, or at least the levy. *Ex parte Mobley*, 19 S. C., 341. That under judgment, execution, levy, and sale, all McBride's right, title, and interest, which was a fee, was sold to W. B. Smith; and that even though said sheriff's deed may be defective, the possession of Smith and his grantees, from May 2d, 1848, to the present time, would be possession under color of title, and could be defended against the world. *Third.* Under judgment, execution, levy, and sale, the fee in McBride was sold. Even though the sheriff in his deed may have made a mistake, and failed to convey said fee, he or his successors can be made to correct it, and equity will consider that done which should have been done. *Small* v. *Small*, 16 S. C., 70. *Fourth.* Under section 109 of the Code, which was evidently passed for the purpose of quieting titles, I hold that possession by W. B.

Smith and his grantees, from May 2d, 1848, to the present time, a period of over forty years, is valid against the world.

These premises were sold at judicial sale; I find the title good and marketable, and recommend that the purchaser be ordered to comply with his bid.

From a decree confirming this report, Heiser, the purchaser, appealed.

*Messrs. Inglesby & Miller,* for appellant.

*Messrs. Buist & Buist,* contra.

September 30, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. Under proper proceedings in this case for the foreclosure of a mortgage given by one John McMahon, the intestate of defendant Ellen, a certain house and lot in the city of Charleston was offered for sale by the master, and bid off by the appellant, H. A. Heiser. He having failed to comply with the terms of the sale, a rule was issued against him, to show cause why he should not be required to do so. To this rule the appellant made return, setting forth certain objections to the title to the premises which he bid off, and asking a reference to Master Sass, to inquire into, and report upon, the title. A reference was accordingly ordered, and the master made his report (which should be incorporated in the report of this case), in which he found that the title was good and marketable, and recommended that the purchaser be required to comply. To this report, Heiser, the appellant, filed sundry exceptions, and the case was heard by his honor, Judge Izlar, upon the report and exceptions, together with an admission by counsel, that, subsequent to the filing of the master's report, a deed was executed by Hugh Ferguson, the present sheriff of Charleston County, to W. B. Smith for the premises in question, which, by consent, is incorporated in the "Case," and agreed to be considered as a muniment of the title tendered to the appellant Heiser. The Circuit Judge over-

40—37

ruled all of the exceptions to the master's report, and confirmed the same. He also found, in addition to the findings of the master, that W. B. Smith, the mortgagee, having entered into possession in 1848 of the premises mortgaged to him by Patrick McBride in 1845, said mortgage amounted to an alienation, "or, at least, furnishes satisfactory evidence of an executory contract for the sale of the land in fee." He, therefore, rendered judgment, that the title tendered to H. A. Heiser was good and marketable, and requiring him to comply with the terms of the sale.

From this judgment the said Heiser appeals, upon the several grounds set out in the record, which are, substantially, as follows: 1st. Because the deed from Shingler, sheriff, to W. B. Smith vested only a life estate in him, and no title has been acquired by adverse possession. 2d. Because said deed affords no evidence of an executory contract of sale *of the fee*, and, hence, no title to the fee has been acquired by possession under said deed. 3d. Because, even if evidence of such executory contract, the right to the enforcement of such contract has been lost by the *laches* of the purchaser and his assigns. 4th. Because the mortgage from McBride to Smith, and the subsequent possession of the latter, did not operate either as a conveyance of the fee or as an executory contract to convey the same. 5th. Because the deed from Robert White to John Mc-Mahon has never been recorded according to law. (The sixth ground is so general in its character, as to render any statement of it unnecessary.) 7th. If the title is otherwise defective, the recent deed from Sheriff Ferguson to Smith cannot cure such defects, because said Ferguson had no authority to execute such a deed.

The muniments of title tendered to appellant, briefly stated, are as follows:

1st. A conveyance in fee from one Joseph Johnson to Patrick McBride, dated 15th August, 1839.

2d. A mortgage of McBride to W. B. Smith, dated 21st of November, 1845, of the same premises.

3d. A conveyance from Sheriff Shingler to W. B. Smith of the same premises, made in pursuance of a sale under an exe-

cution issued to enforce a judgment obtained against a firm of which McBride was a member, which was made 2d May, 1848, and while it purports to convey "all the estate, title and interest, which the said Patrick McBride, one of the firm of McBride, Hanckel & Co., of right had in and to the same," it does not contain the technical word "heirs," which the master finds, as matter of fact, was, through a clerical error, omitted. When Smith thus became the purchaser of McBride's interest in the premises in question, he took possession, and, as the master finds, held the same, claiming title adverse to all the world, continuously and exclusively, until he sold the premises to Robert White, 14th of September, 1852.

4th. A conveyance in fee from W. B. Smith to Robert White, dated 14th September, 1852. This conveyance does not contain a clause of general warranty, but does contain a warranty against Smith and his heirs.

5th. A mortgage from White to Smith, bearing even date with the conveyance just mentioned, given to secure the purchase money. Upon this mortgage there is an entry of satisfaction, dated 11th February, 1862.

6th. A conveyance in fee from Robert White to John McMahon, dated 4th of December, 1863, which was recorded in the proper office on the 11th December, 1863. But the probate endorsed on that deed appears to have been taken before one John Phillips, who signed his name thereto without any word designating his official character. But it appeared in evidence that on the purchase money mortgage, executed on the same day, the probate shows that it was taken before "John Phillips, magistrate;" and the master finds, as matter of fact, that the probate on the deed was sworn to before said Phillips, who was "a member at that time of the Charleston bar, who neglected to sign as a magistrate or notary public, but in the purchase money mortgage given on the same date, he signs his name to the probate of the same as a magistrate." It also appeared in evidence that the premises in question were in the possession of John McMahon and his family from 1863 up to the date of the reference, 19th April, 1892, a period of more than twenty-eight years.

7th. A mortgage from John McMahon to the plaintiff herein, which constituted the foundation of the proceedings for the sale at which appellant bid off the property.

Two objections are taken to the title: 1st. Because of the omission of the technical word "heirs" in the deed from Shingler, as sheriff, to W. B. Smith, whereby it is claimed that he, as well as those claiming under him, took only a life estate in the premises. 2d. Because the deed from Robert White to John McMahon was never legally recorded, as it was never properly proved.

We will consider these objections in an inverse order. In view of the facts found by the master, upon what we regard as testimony warranting such findings, we do not think the second exception is tenable. As a matter of fact, the probate was made before an officer authorized to take it, and when that fact is established, the mere omission of the official title of the officer amounts to nothing. The question is, was the probate made before a proper officer, and that question may be determined either by his signing his name officially or by evidence showing that he was such an officer at the time. See *Genobles* v. *West*, 23 S. C., 154. But in addition to this, it appears in the "Case" that it was admitted that the original conveyance from Robert White to John McMahon, with proof of the handwriting of the grantor and subscribing witnesses, and that they were all dead, appended thereto, was tendered to appellant before the rejection by him of the title. So that even if there were any defect in the original record, this was sufficient to cure it; especially where, as in this case, there does not appear to be any intervening rights.

As to the first objection, while it is quite true that the word "heirs" is necessary to create an estate in fee by deed, and if nothing else appeared we would be compelled to give effect to this strict, technical rule, yet we think there is quite enough in this case to relieve us of the necessity of applying this purely technical rule. It will be observed that the deed in which this important word is wanting is not a deed from one private individual to another, but it is a deed made by an officer of the law in his official capacity, under the

mandate of the court which required him to sell all the estate of the judgment debtor McBride in the premises, whatever such estate might be, and he had no authority to sell anything more or anything less. When, therefore, the sheriff, under this mandate, undertook to sell the premises in question as the property of the judgment debtor McBride, he must be regarded as having sold all the estate which McBride had in the premises, and accordingly the deed purports to convey "all the estate, title and interest, which the said Patrick McBride, one of the firm of McBride, Hanckel & Co., of right had in and to the same." Now, as there can be no doubt that the estate of McBride was a fee, as shown by the terms of his deed from Johnson, it follows, necessarily, that Sheriff Shingler could only sell, and did sell, to the purchaser, W. B. Smith, the fee, who, upon compliance with the terms of the sale (which is admitted), was entitled to receive from the sheriff a conveyance in fee.

If the purchaser never received such a conveyance as he was entitled to receive, then, it seems to us, that just such a case is presented as was intended to be provided for by section 686 of the General Statutes; and hence the title made to W. B. Smith by Hugh Ferguson, the present sheriff, which does convey the fee, vested in said Smith the fee in said premises, and relates back to the time of the sale. *Ex parte Mobley*, 19 S. C., 337.

But, in addition to this, when McBride went out of possession, his mortgage to W. B. Smith, under the law, as it then stood, operated as an alienation, under the authorities cited by the Circuit Judge. *Warren* v. *Raymond*, 12 S. C., 9; 17 S. C., 163.

If, however, the foregoing views are not sound, we think it clear that the possession of W. B. Smith, under his purchase at sheriff's sale, which entitled him, as we have seen, to a conveyance in fee, which the master finds was adverse to all the world, and the subsequent possession, of like character, in those claiming under him, was quite sufficient to vest in them a title in fee. Indeed, the possession of

McMahon alone, extending over a period of more than twenty years, would be amply sufficient to presume a grant.

It will not do to say, as is contended by appellant, that these various possessions, having commenced under a deed which only vested a life estate in W. B. Smith, could not become adverse until after his death, as such possession would be presumed to be of nothing but the life estate of Smith, and were entirely consistent with such an estate—for two reasons: In the first place, the sheriff, having sold the entire estate of McBride, which was a fee, had no authority to convey any lesser estate to the purchaser, and, even if he had, in express terms, undertaken to convey a mere life estate, having no authority to do so, his attempt would be nugatory, and the purchaser's possession would be referred to the legal right to which he was entitled, and not limited by the character of the conveyance, which the sheriff, without authority, undertook to make. See *Iseman* v. *McMillan*, 36 S. C., 27, which, though not a case in which the sale was made under an execution, yet the same principle applies—that the power of the sheriff in making a sale is limited by the mandate, be it an ordinary execution or a judicial order, under which he sells. While it is true, that, where the sheriff sells and conveys the property of the judgment debtor under execution, he, to a certain extent, acts as the agent of such judgment debtor, yet he has not all the powers of his principal. For, while McBride might have sold to Smith a mere life estate in the property, or any greater or lesser estate therein, yet the sheriff, as his agent, had no such power, but could only sell whatever estate was vested in McBride, which undoubtedly was a fee.

Smith, the purchaser, having thus bought the fee, and being entitled, by virtue of his purchase, to demand a conveyance of the fee, and having asserted his right to the fee, as is conclusively shown by the terms of his deed to Robert White, his possession must be regarded, as found by the master, to be adverse to all the world; and the mere fact that he took what purported to be a deed from the sheriff, in which the technical word necessary to carry the fee was not to be found, by reason of a mere clerical omission, as the master finds, cannot be re-

garded as sufficient to show that he was in possession, claiming only a life estate in the premises in question. And as all of those claiming under him went into possession under deeds purporting to convey the fee, their possession must be regarded as that of persons claiming an estate of that nature; and, as we have said, the possession of McMahon alone was for such a period as would be quite sufficient to perfect the title.

It seems to us, therefore, that in any view of the case there was no error on the part of the Circuit Judge in holding, that the title tendered appellant was good and marketable, and that he should, therefore, be required to comply with the terms of the sale.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.