HEARD APRIL TERM, 1878.

## McElwee *vs.* Wheeler.

Testator devised land to A., his unmarried daughter, for life, with remainder " to any child or children she may have living at the time of her death ;" but if she should die not leaving any children or child alive at her death, then over " to any brothers and sisters and the children of any deceased brother or sister residing in this State at the time of her death, equally, or share and share alike ;" such child or children to take only the share which "their deceased father or mother would have taken if living." A. never had issue, but had brothers and sisters who were living in this State at the death of the testator and at her death : *Held,* That the limitation over to the brothers and sisters of A. was a contingent remainder.

A contingent remainder, to take effect upon the death of a married woman who holds the particular estate for life, may be defeated by a feoffment with livery of seizin by husband and wife.

BEFORE KERSHAW, J., AT YORK,                    , 1877.

This was an action by Jonathan N. McElwee and others against Burritt T. Wheeler and others to recover the possession of a tract of land.

The case is stated in the opinion of the Circuit Court, which is as follows :

KERSHAW, J.   The plaintiffs claim a certain tract of land described in the complaint, under a devise made by William McElwee, late of York County, deceased, which is in these words :

"To Agnes McElwee, to her own use and possession during her natural lifetime, and after death to any child or children she may have living at the time of her death ; but if she should die not leaving any children or child alive at her death, then and in that case the said tract of land    *    *    *    *    shall revert and go back absolutely and unconditionally to any brothers and sisters and the children of any deceased brother or sister residing in this State at the time of her death, equally, or share and share alike ; but the child or children of any deceased brother or sister shall only take a share equal to the share their deceased father or mother would have taken if living."

Agnes was unmarried at the time of testator's death, but subsequently intermarried with James McElwee, and died without ever having had a child.   During her lifetime she joined her husband in making a deed of feoffment with livery of seizin to one Samuel A. McElwee, conveying the land in dispute in fee, and renounced her inheritance thereon in the form required in case of a release under the Act of 1795, (5 Stat., 257,) in the presence of a Magis-

trate, which renunciation, with the deed of feoffment, was duly recorded.

Samuel A. McElwee then reconveyed the land to the said James McElwee, the husband of Agnes, and he subsequently to the defendant Wheeler. The other defendants, with the plaintiffs, constitute the second class of remaindermen under the devise.

These facts present two questions of law for determination.

1. What was the nature of the interest created in the second class of remaindermen under the devise?

2. Has that interest been destroyed by the deed of feoffment?

1. The devise was to Agnes for life, with remainder to her children surviving, if any should be at the time of her death, with remainder over.

The remainder to the children was contingent upon her marriage and the birth of issue at the time of her death.

It was also a remainder to her children living at the time of her death *in fee* under the Act of 1824, which declares that any gift of land by devise shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator, express or implied. The limitation over to the brothers and sisters must, therefore, be a contingent remainder, because when there is a contingent limitation in fee absolute no estate limited afterwards can be vested. "Where the mesne estates limited are for life, or in tail, the last remainder may, if it be to a person *in esse*, vest, but no remainder after a limitation in fee can be vested."—Fearne Con. Rem., 6th ed., 225.

This second limitation is a substitute for or alternative of the other, to take place if the former should fail of effect. The one is not expectant upon or to take effect after the other, but is contemporary, "commencing from the same period, not indeed together, but the one to take effect in lieu of the other, if that failed."—*Id.*, 373. "A devise to B for life, he being unmarried, remainder to his children, but if he dies without leaving children, remainder over, both remainders are contingent."—4 Kent, 295, note b, 5th ed.; see authorities there cited. This sort of alternative limitation is termed "a contingency with a double aspect," sometimes "limitations on a double contingency," and sometimes "concurrent or contemporary limitations." I shall not prolong this decision by discussing the propositions embraced, but content myself with references to the authorities I have consulted, which sustain the conclusions at which

I have arrived.—*Redfern* vs. *Middleton* and *Dehon* vs. *Middleton*, Rice, 459-64; 2 Jarman on Wills, (Perkins' ed.,) 229, margin p. 315; *Dale* vs. *Barber*, 2 Barb., 485; *Doe* vs. *Burnsall*, 6 D. & E., 30; *Ives* vs. *Legge*, 3 D. & E., 488, in note; *Doe* vs. *Perrin*, 3 D. & E., 488, 494, opinion by Butler, J.; 2 Washburn Real Prop., 250.

2. If contingent, the remainder over to these plaintiffs was barred by the feoffment, if there was a valid feoffment by the life tenant.— *Dehon* vs. *Middleton, ubi supra.* It has been supposed that the deed of feoffment here would not have that effect, because of the disabilities of the life tenant, Agnes McElwee, resulting from coverture at the time of the feoffment and the absence of an acknowledgment in due form of law.

If she had made the acknowledgment in the manner prescribed by A. A. 1731, as amended by A. A. 1767, the deed, in the language of these Acts, would have been "deemed as effectual and valid in the law, to all intents and purposes whatsoever, as any fine passed in due form of law in His Majesty's Court of Pleas at Westminster."

Having determined that she was not seized of an estate of inheritance, but of a life estate merely, and the acknowledgment not having been made in accordance with the Acts above mentioned, was entirely nugatory, and the deed of feoffment inoperative, so far as her rights were concerned.—*Hays* vs. *Hays*, 5 Rich., 38; *Brown* vs. *Spann*, 2 M. Con., 12.

Upon the principles laid down in these cases, and which are in accordance with the decisions elsewhere, it is doubtful if a married woman could convey her inheritance under the Act of 1795 (5 Stat., 257,) by any other form of conveyance than that prescribed by the Act. It only enabled her to do so by joining her husband in a release "to the purport of the one therein before prescribed." A deed of feoffment with livery of seizin is of an entirely different character. The difficulty of plaintiffs lies beyond this.

By the common law the alienation of the husband who was seized in right of his wife worked a discontinuance of the wife's estate, and thus destroyed the estate in remainder by the determination of the particular estate before the happening of the contingent event upon which it was to vest.—2 Comm., 171; 3 *id.*, 172.

To remedy this, the Statute 32 Henry VIII, Chap. XXVIII, provided that no act of the husband alone should work a discontinuance of or prejudice the inheritance of the wife, but that after his death

she or her heirs might enter on the lands in question.—3 Comm., 172. And the rights of all others which appertained after her death were in like manner preserved, with an exception of fines levied by the husband and wife, whereunto the wife was party or privy. And although the statute mentions feoffment made by the husband only, yet it was held that the statute applied when the wife joined in the feoffment, because that was a void act, so far as concerned her rights.—Roper, Husband and Wife, 1–60.

Unfortunately for these plaintiffs this statute is not of force in this State, and the feoffment of the husband had the same effect as at common law, and destroyed the particular estate upon which depended the contingent remainder. It was suggested that the limitation might be construed an executory devise which could not be barred by the feoffment; but having shown that it was a contingent remainder, it cannot be an executory devise.—*Purefoy* vs. *Rogers*, 2 Sanders, 388.

Though this may be regarded as a deliberate and tortious defeat of the will of the testator, in obedience to technical rules and distinctions which are binding on the Courts until altered by the Legislature, it must be upheld, however wrongful, or, in the language of Chancellor Kent, however "flagrantly unjust and repugnant to every settled principle of equity as now understood."—4 Kent, 252, note.

It is, therefore, adjudged that the complaint be dismissed; that the defendants have judgment for their costs and disbursements.

The plaintiff appealed on the following grounds:

1. For that His Honor held that the remainder after the death of Agnes was a contingent remainder.

2. For that His Honor held that the remainder created by the will could be barred by a deed of feoffment and livery of seizin so as to defeat the estate of those in whom the land was to vest, according to the terms of the will, in the event of Agnes dying without leaving issue living at the time of her death.

3. For that His Honor held that the limitation in the will of William McElwee, deceased, in favor of the plaintiffs and certain of the defendants as to the premises in issue conferred such an estate as could be defeated by the act of the life tenant, Agnes McElwee.

4. For that His Honor held that the limitation in the will of William McElwee, deceased, in favor of the plaintiffs and certain of the defendants as to the premises in issue conferred such an estate as could be defeated by the act of the life tenant, Agnes McElwee, and her husband.

5. For that His Honor held that the limitation in the will of William McElwee, deceased, in favor of the plaintiffs and certain of the defendants as to the premises in issue conferred such an estate as could be defeated by the act of the husband of Agnes McElwee.

6. For that His Honor held that there was an effectual relinquishment by deed and release by the life tenant sufficient to bar the estate of the plaintiffs and certain of the defendants.

*Rion*, with whom was *Hart & Hart*, for appellants:

1. Since the Act of 1795, (5 Stat., 255,) the power of a married woman in parting with an interest in land is limited by the provisions of said Act and the Acts of 1731 and 1767.—*Hays* vs. *Hays*, 5 Rich., 38, 39, citing *Brown* vs. *Spann*, 2 Mills, 12.

Agnes's release of her inheritance was a nullity, as she did not have a fee in the land, (*Hays* vs. *Hays*, 5 Rich., 38,) and she did not acknowledge a conveyance "before any of the Judges."— *Ibid*, 38, 39.

2. The remainder *vested*, and, therefore, not contingent. Remainders are not contingent because there may be a contingency as to whether the beneficiary may ever come into *enjoyment of the provision* made for him, but when there is a contingency as to whether the remainder shall ever be *vested*. Hence, whenever there is *in esse* a person who could immediately take if the prior estate should then end, the remainder, *eo instanti*, becomes vested. There would have been less confusion of ideas upon this subject had the division of remainders into *vested* and *non-vested* obtained instead of *contingent* and *vested*.—2 Wend. Black., 170, 171, and notes; 1 Fearne on Remainders, 216.

In our case there were brothers of testator living in the State at the time of his death, who continued so to reside up to and at the time of the death of Agnes without children. Hence, if at any moment after testator's death Agnes had died, the remaindermen mentioned in the will were *in esse* and qualified to take, and, there-

fore, the remainder was at all times vested.—2 Wend. Black., 169; 4 Kent Com., 202–3 and 206; 1 Fearne on Remainders, 225, 226.

3. Even if the remainder should be a contingent remainder, then it can be supported as an executory devise, and, as such, not barred.—1 Fearne on Remainders, 395, 396, 517.

4. This case is concluded by the decisions of this Court in *Bedon* vs. *Bedon*, 2 Bail., 250; *Hay* vs. *Hay*, 4 Rich. Eq., 382; *Seabrook* vs. *Gregg*, 2 S. C., 71, 73, and *post*.

The decision of the Court in *Dehon* vs. *Redfern*, (Dud. Eq., 115,) not contra; and see foot of page 120.

*Wilson & Wilson*, contra :

I. In this State a deed of feoffment with livery of seizin by the life tenant of the legal estate will bar all contingent remainders. The validity of such deeds has been recognized by our Courts and by Acts of the Legislature.—*Redfern* vs. *Exr. of Middleton*, Rice, 459; Act of 1785, 1 Brev. Dig., p. 172, Tit. 51; Act of 1631, p. 170, *id.*, and Act of 1795, *id.*, p. 176. Such deeds are not against public policy, as they serve to defeat and prevent perpetuities, which, in the language of Lord Coke, are "inconsistent with the welfare of the State, and, therefore, contrary to the policy of the law."—2 Fearne on Rem., 392.

II. Plaintiff's interest under the will of William McElwee a contingent remainder, and barred by the deed of feoffment and livery of seizin from Agnes McElwee and her husband, James McElwee, to S. A. McElwee. "Contingent or executory remainders, whereby no present interest passes, are where the estate in remainder is limited to take effect either to a dubious and *uncertain person*, or upon a dubious and *uncertain event*, so that the particular estate may chance to be determined and the remainder never take effect."—1 Black., 2 book, 135.

"A contingent remainder is a remainder limited so as to depend on an event or condition which may never happen or be performed, or which may not happen or be performed till after the determination of the preceding estate."—1 Fearne on Rem., 3.

In 1 N. Y. Rev. Stat., 723, Section 13, the definition is brief and precise, viz.: "A remainder is contingent whilst the person to whom or the event upon which it is limited to take effect remains uncertain." If at the death of Agnes she left children, then the plaintiffs could not take. But this event was uncertain.

At the time of the death of Agnes the plaintiffs might have all been dead, or, if alive, not residents of the State. Both events were uncertain, and the remainder, therefore, contingent.

It was also uncertain who of the remaindermen would be alive at the death of Agnes, and, if alive, then resident in the State; therefore the persons to whom limited were dubious.

"It is not the uncertainty of enjoyment in future, but the *uncertainty of the right* to that enjoyment, which marks the difference between a vested and contingent interest."—4 Kent, 198. Here the right to enjoy was uncertain, *not fixed*, because it could not be known until the decease of Agnes whether plaintiffs would have any interest. If at her death Agnes left children, or at that date the plaintiffs were non-residents, in either event they had no claim. If the devise had been to Agnes for life, and at her death to plaintiffs, they would take a vested remainder, for, though it would be uncertain whether they would survive Agnes, their right would not be uncertain but *fixed*. But, under the will, plaintiffs had no *fixed right* to enjoy, and, therefore, there could be no present capacity to take possession. In vested remainders there is a certainty upon the part of the remainderman, during the existence of the first estate, that at its termination he will take—that no object or right can arise or intervene between him and the estate. There is a certainty *now* of no uncertainty then. The capacity to take now exists as it will then if alive, because the right is fixed—it depends upon no contingency.

III. "No remainder after a limitation in fee can be vested."— 1 Fearne on Rem., 224. Here there is a limitation in fee to the children of Agnes living at the time of her death. It is the clear intent of the testator. Therefore, the limitation over, *after* this estate, to the plaintiffs, is necessarily a contingent remainder. "A devise to B for life, he being unmarried, remainder to his children; but if he dies without leaving children, remainder over, both remainders are contingent."—4 Kent, 295. Further, if Agnes left no children at her death, and no brothers or sisters, nephews or nieces, then resident in this State, the remainders could not take effect. This clearly distinguishes the character of the remainders as contingent and not vested.—1 Fearne on Rem., 216 ; 2 Ves., Jr., 357; 1 Black., 135, note 10. In the words of Blackstone, "the particular estate may chance to be determined and the remainder never take effect."

"It is not the uncertainty of ever taking effect *in possession* that makes a remainder contingent, for to that every remainder for life or entail expectant upon an estate for life is and must be liable, as the remainderman may die, or die without issue before the death of the tenant for life. The *present capacity* of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent."—2 Cruise Dig., 270. During the life of Agnes there was no "present capacity" to take in the plaintiffs. Their capacity depended upon events in future, and not to be known until the death of Agnes.

IV. "When a limitation over can be supported as a contingent remainder, it will never be construed as an executory devise." Lord Mansfield said: "It was perfectly clear and settled that when an estate can take effect as a remainder it shall never be construed as an executory devise."—1 Fearne on Rem., 394.

In this case there is not a fee mounted upon a fee, but a contingent remainder. The limitation is to Agnes for life, remainder to her children if alive, and in default of children, to the plaintiffs. The remainder to the plaintiffs is good as being collateral to the contingent fee in the issue. It is a contingent remainder with a double aspect. But if the remainder over to the plaintiffs had been merely in the event of the children of Agnes dying before twenty-one, then it would have been good only as an executory devise, for it would have rested on the rescinding of a prior vested fee.—4 Kent, 192. "In an executory devise *no estate* vests at the death of the devisor, but only on some future contingency."—1 Black., 139. It requires no precedent estate to support it. Upon the death of the testator a life estate vested in Agnes. It was simply a devise to Agnes for life, with a contingent remainder over. While an executory devise, in many of its features, resembles a contingent remainder, if all the essentials of the latter are present the Courts will never construe the will as an executory devise.

V. The contingent remainders could only have been supported so as to prevent bar by feoffment by the intervention of a trustee.— 2 Black., 172; Rice, 466; 2 Washburn on Real Property, 548. There was only a possibility of reverter to the heirs-at-law of the testator in case there had not been a deed of feoffment or all the remainders had failed. As soon as the feoffment was executed all

remainders and contingencies were barred and a fee simple title to the land vested in S. A. McElwee, who conveyed to James McElwee, and he to the respondent, B. T. Wheeler.—4 Kent, 253.

This case is similar to *Gilman* vs. *Elvey*, 4 East, 315. The devise to the children of Agnes and to the plaintiffs were contingent remainders in fee, but they were concurrent contingent remainders, of which *one only* could take effect. If Agnes left children surviving her, they took, and plaintiffs could not take. They were not, therefore, alternative limitations. The feoffment was not prevented either by fee being in the heirs of the testator or by alternative limitation.—4 Kent, 223, 234, 239.

VI. The Statute of 32 Henry VIII applies where the estate of the wife is a *fee*, and on the death of the husband gives her or her heirs the right of entry. But this statute has not been made of force in this State; if it were it could not avail the appellants. Agnes took under the will an estate for life only. This, at common law, the husband could dispose of and convey absolutely. At her death the life estate would terminate.

"Estates for life being freehold estates could only commence in livery of seizin, and can only be avoided by entry."—*Waller* vs. *Hill*, 2 Saund., 180. There was no entry in the lifetime of Agnes, and no right of entry in the plaintiffs.

"If wife have an estate for her life the husband becomes seized of such an estate in right of his wife."—2 Kent, 113; McQueen on Husband and Wife, p. 33, Section 3, Law Lib., vol. 28. The alienation by the husband, James McElwee, destroyed the estate in remainder, by the determination of the particular estate before the happening of the contingent event upon which it was to vest.—See authorities cited in circuit decree. Also, "a feoffment by the husband and wife is a discontinuance, for, though the wife joins, it is the act of the husband alone."—Coke on Littleton, 326; Bingham on Law of Coverture, 221.

"At common law any alienation made by the husband of his wife's land, whether by feoffment, fine or recovery, was a discontinuance."—Bingham on Coverture, p. 219, Chap. III. As analogous, sale of an estate for life by Court of equity held sufficient " to make the title good against all contingent interests and remainders, though the life tenant the only party before the Court."— 4 Rich. Eq., 476, 493; *Williman* vs. *Holmes*, 2 Rich. Eq., 321; *Vanlieu* vs. *Parr, Bofil* vs. *Bofil*, 3 Rich. Eq., 1.

The manner of the execution of the wife's release·is not, therefore, important, as feoffment by the husband barred the contingent remainder.

VII. In the case of *Hays* vs. *Hays and Evans* (5 Rich., 38,) the contest was between a widow as plaintiff and a purchaser under Sheriff's title as defendant. The release had been wrung from the wife by the cruelty of a drunken husband, and O'Neall, J., in delivering the opinion, says: "Such a release so obtained never, with my consent, shall bar the rights of the wife." Under the pressure of this praiseworthy object, he held that a life estate is not the subject of release under Section 3 of the Act of 1795. The Judges did not all concur, and he adds (on page 39): "But as we have not all satisfactorily attained this conclusion, it is necessary to look beyond it, namely, to the point that the release was not voluntary. The words of the Section are: 'Every married woman of the age of twenty-one years who may be entitled to *any real estate* as her inheritance and may be desirous of joining her husband in conveying away the fee simple of the same.' Is it not a reasonable construction that the statute meant *any estate* the wife may have inherited? Is it reasonable to suppose that the Legislature intended to provide that the weaker safeguard should be limited to the conveyance of the larger estate? That if a wife wished to convey any estate *less* than an estate of inheritance, she must acknowledge the instrument before a Judge, but that as to an estate in fee simple, acknowledgment before a Magistrate would be sufficient? The right to convey the greater estate, under the Act of 1795, certainly implied the right to convey the less. The Act was, perhaps, intended as a substitute for the Acts of 1731 and 1767, enacted in the colonial period."

IX. But the present case is a very different one from that of *Hays* vs. *Hays and Evans*. Here there is a deed of feoffment, with livery of seizin, in which wife and husband unite. In addition to the life estate under the will, the wife had, by operation of law, the right and power to bar the contingent remainder and convey a fee simple. The two constituted an estate "not less than an estate of inheritance." The words used in the Act of 1795, Section 3, are: "Joining her husband in conveying away the fee simple of the same to another person." She was permitted by the Act to thus convey a "fee simple." This she and her husband did, as the deed shows and recites—"*a good title in fee simple to the premises.*"

Such a case does not come in conflict with the decision in *Hays* vs. *Hays and Evans.* The point urged by O'Neall, J., in that case, was that for a wife's release before a Magistrate to be valid the. conveyance must be of a fee simple. Here there was a conveyance of a fee simple title and the act of the wife was voluntary and in due form.

November 22, 1878. The opinion of the Court was delivered by

McIVER, A. J. The land in controversy in this case was devised "to Agnes McElwee, to her own use and possession during her natural lifetime, and at her death to any child or children she may have living at the time of her death; but if she should die not leaving any children or child alive at the time of her death, then, and in that case, the said tract of land and the before named negroes, with their future increase, together with the other property herein bequeathed to my daughter Agnes, shall revert and go back absolutely and unconditionally to any brothers and sisters and the children of any deceased brother or sister residing in this State at the time of her death, &c." At the time of testator's death, which occurred on the 15th November, 1854, Agnes was unmarried, but she subsequently intermarried with one James McElwee and died on 20th September, 1875, without ever having had a child. Subsequent to her marriage she joined her husband in making a deed of feoffment and livery of seizin to one Samuel A. McElwee, conveying the land in dispute in fee, which deed bears date the 29th September, 1857. Samuel A. McElwee then conveyed the land to James McElwee, and he to the defendant, Wheeler. The plaintiffs and all of the defendants, except Wheeler, are the brothers and sisters of Agnes, and children of deceased brothers and sisters who were residing in the State at the time of the devise and death of the testator, and continued so to reside in the State until after the death of Agnes. The questions presented are: 1st. Whether the limitation to the brothers and sisters constituted a vested or a contingent remainder. 2d. If contingent, was the deed of feoffment and livery of seizin sufficient to bar such remainder? The Circuit Judge held that it was a contingent remainder and that it was barred by the deed of feoffment.

We think that the conclusions reached by the Circuit Judge are correct, and are so fully sustained by his reasoning and the authorities which he has cited that it is scarcely necessary for us to add

anything to what he has said, especially as we have quite recently had occasion to consider and determine a question somewhat similar to the first in the case of *Faber* vs. *Police*, in which the opinion has just been filed. It was urged in the argument that "the present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent."— Fearne on Rem., *216. And, therefore, whenever there is *in esse* a person who could immediately take, if the prior estate should then end, the remainder, *eo instanti*, becomes vested; and as in this case there were brothers and sisters of Agnes residing in the State continuously from the time of the death of the testator up to the time of the death of Agnes, if at any moment after testator's death Agnes had died the remaindermen mentioned in the will were *in esse* and qualified to take, Agnes never having had a child, and, therefore, the remainder was at all times vested. This argument, though plausible, cannot stand the test of examination. It is very certain that the limitation to the brothers and sisters depended, by the express terms of the devise, upon the happening of two events, both of which were uncertain at the time the devise took effect, and continued to be uncertain until the death of Agnes: First, the contingency that Agnes should die "not leaving any children or child alive at her death; and, second, the contingency that one or more of the brothers and sisters should be residents of this State at the time of the death of Agnes. Hence, it would be more correct to say that there was no moment during the existence of the precedent life estate when these remaindermen could claim that they had a present fixed right to take possession when the possession should become vacant by the termination of the precedent particular estate, because until that estate terminated their right remained uncertain and wholly dependent upon the happening of the two contingencies above mentioned. Suppose Agnes had died in giving birth to a child which survived her, their right to take would have been, not *defeated*, because that would imply perhaps that the right had once existed, but their *chance* of having such right, which before had rested in contingency, would then have been wholly lost. It seems to us, therefore, very clear that their interest was wholly contingent— not merely that their right to enjoy the estate in possession, but that their right to future possession, was wholly contingent.

The argument of the appellants is based upon a misconception of the proposition laid down by Fearne, which we have quoted above, as is apparent from the illustration which he employs to elucidate such proposition. For, after laying down that proposition, he proceeds to .say: "For instance, if there be a lease for life to A, remainder to B for life, here the remainder to B, although it may possibly never take effect in possession because B may die before A, yet, *from the very instant of its limitation*, it is capable of taking effect in possession if the possession were to fall by the death of A; it is, therefore, vested in interest, though perhaps the interest so vested may determine by B's death before the possession he waits for may become vacant."

The italics are ours, and the difference between the case stated by Fearne as an illustration of the rule relied upon by the appellant and that now under consideration is that in the former the remainderman, from the very instant the limitation was made, had the right to the possession upon the falling in of the precedent estate, which right did not depend upon any contingency but only upon the death of A,—an event certain to happen,—while in the latter the right remained contingent, being dependent upon the happening of two uncertain events during the whole of the existence of the precedent estate, and it could not be known certainly that such right would ever be entitled to become vested until the determination of the particular estate. Again, Fearne, on page *217, says that " whenever the remainder is limited to a person not *in esse*, or not ascertained, or whenever it is limited so as to require the concurrence of some dubious, uncertain event, independent of the determination of the preceding estate and duration of the estate limited in remainder, to give it a capacity of taking effect, then the remainder is contingent. Now, in this case, the remainder is limited to persons some of whom may not have been *in esse*—the children of deceased brothers and sisters—because after the death of the testator some one or more of the brothers or sisters might have died leaving children born subsequent to the death of the testator who were residing in this State at the time of the death of Agnes. If so, it is difficult to see how they could be excluded. How the fact may be in reference to this matter does not appear, as the "case" only discloses the names of such children of deceased . brothers and sisters as were living in this State *at the time of the death of the testator* who continued to live here until the death of

Agnes; but whether there were any such children born subsequent to the death of the testator living in this State at the time of the death of Agnes we are not informed. Be that as it may, the limitation certainly was to a class of persons "not *ascertained*," for it was not merely to the brothers and sisters but to such of them as should be living in the State at the time of the death of Agnes. Who they would be could not, of course, be "ascertained" until her death.—See *Luddington* vs. *Kine*, 1 Ld. Raym., 203, and *Gilman* vs. *Elvey*, 4 East, where similar limitations were held to create contingent and not vested remainders.

As to the second question, we are content to rest that upon the reasoning employed and the authorities cited by the Circuit Judge. For even assuming that a married woman could not convey her life estate without making the acknowledgment in the manner prescribed by the Act of 1731, as amended by the Act of 1767, yet the deed of feoffment, in that case, would be regarded as the deed of the husband alone; and by the common law, which in this respect had not at the time this deed was made been altered or modified in this State, the conveyance of the husband alone operated as a discontinuance of the wife's life estate, and thus destroyed the estate in remainder by the determination of the particular estate before the happening of the contingency upon which alone the remainder could vest.—2 Kent Comm., 133, 5th ed.; 1 Wash. on Real Prop., 578.

The judgment of the Circuit Court is affirmed.

*Willard*, C. J., and *Haskell*, A. J., concurred.